UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LEHMAN BROTHERS HOLDINGS INC.,     :
    :
             Plaintiff,     :
    :
       -against-     :
    :
MUNIR WALJI     :
    :
            Defendant.     :
-----------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/11/11

09 Civ. 1995 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

      Plaintiff Lehman Brothers Holdings Inc. brings this action for breach of contract and foreclosure of a related U.C.C. security interest, alleging that defendant Munir Walji defaulted on a $3.5 million dollar loan. Lehman has now moved for summary judgment. Because there is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law, that motion is granted.

## I.    BACKGROUND

      Lehman Brothers Holdings Inc. is a Delaware corporation with its principal place of business in New York. (Pl.'s Local Rule 56.1 Statement ("Pl.'s 56.1") ¶ 1.)[1] Munir Walji is a citizen of the state of Washington. (*Id.* ¶ 2.) Because the parties are diverse and more than $75,000 is in controversy, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). (*Id.* ¶ 3.)

      On September 28, 2005, Walji executed and delivered to Lehman a Promissory Note (the "Note") in the principal amount of $3,500,000. (*Id.* ¶ 6; Note, Ex. A to Compl.) That Note sets forth applicable interest rates and fees on Lehman's loan to Walji. (Pl.'s 56.1 ¶¶ 7-9; *see, e.g.,*

---

[1] As set forth *infra*, at 4, Walji failed to submit a Local Civil Rule 56.1 statement and accordingly, the material facts set forth in Lehman's Rule 56.1 statement are deemed admitted by Walji.

Note ¶¶ 6, 8.) Walj's indebtedness was secured by a Pledge and Security Agreement also dated September 28, 2005 (the "Security Agreement"). (Pl.'s 56.1 ¶ 10; Security Agreement, Ex. B to Compl.) Under this Security Agreement, Walji gave Lehman a first priority security interest in certain specific assets owned by Walji (the "Collateral"). (Pl.'s 56.1 ¶ 11; Security Agreement ¶¶ 5-7.) The Security Agreement permits Lehman to exercise remedial rights over the Collateral in the event that Walji defaults on the Note, including selling the Collateral. (Pl.'s 56.1 ¶ 13; Security Agreement ¶ 11.)

Both the Note and Security Agreement, each of which was signed by Walji and notarized, specifically provide that they are governed by New York state law. (Pl.'s 56.1 ¶ 4; Note ¶ 15; Security Agreement ¶ 20(d).) They both also contain so-called "no waiver" clauses that provide that "[n]one of the terms or provisions of this Agreement may be waived, altered, modified or amended except in writing duly signed for and on behalf of" both Lehman and Walji. (Pl.'s 56.1 ¶ 25; Security Agreement ¶ 20(c); *see also* Note ¶ 16(c).)

The initial maturity date for the Note was September 27, 2007. (Pl.'s 56.1 ¶ 14; Note ¶ 2(a).) However, the Note provided that Walji had an option to extend the term of his loan for a single twelve-month period. (Pl.'s 56.1 ¶ 15; Note ¶ 2(b).) Pursuant to procedures set forth in the Note, Walji requested in writing—and received—this single twelve-month extension, thereby making the maturity date September 27, 2008. (Pl.'s 56.1 ¶ 16; Ex. C to Compl.) Lehman did not further extend the Note's maturity date. (Pl.'s 56.1 ¶ 16.)

The Note provides that Walji's debt becomes immediately due and payable at the option of Lehman if the entire debt amount were not paid on or before the applicable maturity date—that is, September 27, 2008. (*Id.* ¶ 18; *see* Note ¶ 7.) The Note further provides that if Lehman retains counsel to collect Walji's debt, Walji "agrees to pay on demand all costs of collection incurred by [Lehman], including reasonable attorneys' fees." (*Id.* ¶ 22; Note ¶ 7.)

2

Walji failed to pay back the loan on or before September 27, 2008. (Pl.'s 56.1 ¶ 19; *see* Compl. ¶ 19; Answer.) On November 25, 2008, TriMont Real Estate Advisors, Inc., Lehman's loan servicer, provided Walji with a statement setting forth a total amount due of $2,767,516,31. (Pl.'s 56.1 ¶ 17; Ex. D to Compl.) Three months later—on February 23, 2009—Lehman sent Walji and his attorney a default letter, notifying him that the Note had matured on September 27, 2008, and that "the entire unpaid principal balance of the Note is immediately due and payable in full, together with all accrued and unpaid interest thereon and together with all other sums required to be paid under the Note." (Pl.'s 56.1 ¶¶ 20-21; Ex. E to Compl.) As of that date, the total amount Walji owed Lehman was $2,855,518.60. (Pl.'s 56.1 ¶ 23; Ex. E to Compl.)

Plaintiff commenced this action in March 2009, asserting two causes of action: (1) breach of contract based on defendant's default under the Note and the Security Agreement and (2) foreclosure of a U.C.C. security interest pursuant to Section 9-601(1)(a) of the Uniform Commercial Code in effect in New York, (*see* Compl. ¶¶ 24-31.) Plaintiff has now moved for summary judgment in its favor. Defendant opposes this motion, contending that Lehman orally agreed to extend the maturity date of the Note until at least September 2009 and that therefore he was not in default. (Pl.'s 56.1 ¶ 26; Answer ¶ 5.)

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute as to a material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party

3

opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

### B. Defendant Admits Plaintiff's Statement of Material Facts

Local Civil Rule 56.1(a) requires the party that moves for summary judgment to file "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Lehman has done so.

Local Civil Rule 56.1(b) requires the party opposing summary judgment to file its own Rule 56.1 statement responding to each numbered paragraph of the movant's statement plus any such "additional material facts as to which it is contended that there exists a genuine issue to be tried." Walji has failed to file his required Local Civil Rule 56.1 statement of material facts in opposition to plaintiff's motion for summary judgment. The consequence of that failure is that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Local R. 56.1(c); *see e.g.*, *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998). Still, a district court must ensure that there is support in the record for facts contained in an unopposed Rule 56.1 statement before accepting those facts as true. *Giannullo v. City of New York*, 322 F.3d 139, 140-43 (2d Cir. 2003). Because plaintiff has supported its Rule 56.1 statement with the Note and the Security Agreement signed by defendant, plaintiff's Rule 56.1 statement is adequately supported by the record and the facts set forth in that statement are deemed admitted.

### C. Plaintiff is Entitled to Summary Judgment as a Matter of Law

New York law applies to this dispute. (*See* Note ¶ 15; Security Agreement ¶ 20(d).) "To establish a prima facie case of default on a promissory note under New York law, [plaintiff] must

provide proof of the valid note and of defendant's failure, despite proper demand, to make

payment." *Export-Import Bank of U.S. v. Agricola Del Mar BCS*, 536 F. Supp. 2d 345, 349

(S.D.N.Y. 2008) (citing *Gateway State Bank v. Shangri-La Private Club for Women, Inc.*, 113

A.D.2d 791, 493 N.Y.S.2d 226 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 627, 499 N.Y.S.2d 679

(1986)). Here, it is undisputed that the Note is valid and that Walji has failed to make payment,

despite Lehman's demand.

In defense of his failure to pay the loan in its entirety by September 27, 2008, Walji

contends that he obtained an additional one-year extension of the Note's maturity date pursuant

to a July 2008 oral modification he negotiated with an agent of Lehman. He asserts that in

connection with this modification he paid Lehman $1,188,000, including $964,000 of the

principal amount and $224,000 in prepaid interest. (*See* undated Affirmation of Munir Walji,

annexed to Affirmation of Ira B. Pollack, Esq. dated May 14, 2010.)[2] He submits no evidence

of any alleged oral modification of the Note apart from his own statement. Walji's defense fails.

The Note and the Security Agreement clearly and unambiguously prohibit any oral

modification and require that any amendment be in writing and signed. (Note ¶ 16(c); Security

Agreement ¶ 20(c).) These loan provisions are enforceable under New York law. *See* N.Y.

GEN. OBLIG. Law § 15-301(1) (McKinney 2011) ("A written agreement or other written

instrument which contains a provision to the effect that it cannot be changed orally, cannot be

changed by an executory agreement unless such executory agreement is in writing and signed by

the party against whom enforcement of the change is sought or by his agent."); *FGH Realty*

*Credit Corp. v. VRD Realty Corp.*, 231 A.D.2d 489, 647 N.Y.S.2d 229 (2d Dep't 1996). Walji

has not submitted any evidence whatsoever of a signed, written agreement.

---

[2] It appears that Walji may not even have signed the Affirmation himself since the initials of his attorney—IBP—
appear next to the signature line.

Defendant can overcome the General Obligations Law section 15-301 bar on enforcement of an oral modification to the Note only if there were partial performance or reliance "unequivocally referable to the modification." *John Street Leasehold LLC v. F.D.I.C.*, 196 F.3d 379, 382 (2d Cir. 1999) (internal citation omitted).  To be "unequivocally referable," the action taken by defendant must be "explainable only by reference to the oral agreement." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998) (citing *Anostario v. Vicinanzo*, 59 N.Y.2d 662, 664, 450 N.E.2d 215 (1983)).  If defendant's conduct can be reasonably explained by reasons other than the oral agreement, then his conduct is "equivocal" and the prohibition on oral modifications prevails. *Id.* (internal citation omitted).

Walji's payment of $1,188,000 to Lehman is not "unequivocally referable" to an oral modification of the Note.  Under the Note, Walji owed Lehman $3,500,000, exclusive of interests and fees.  His payment of $1,188,000 can be reasonably explained as partial performance of a pre-existing duty to Lehman—namely, as partial payment of his indebtedness. The fact that Walji neglects to specify when he made this payment or the amount due under the Note at the time he made this payment only bolsters the explanation that he owed Lehman the money irrespective of any oral agreement.  Accordingly, Walji's defense that he extended the maturity date of the Note through an oral modification fails as a matter of law. *See John Street*, 196 F.3d at 382; *see also Mfrs. Hanover Overseas Capital Corp. v. Southwire Co.*, 589 F. Supp. 214, 219-20 (S.D.N.Y. 1984) (noting that performance of a pre-existing duty does not constitute consideration).

Because Walji did not pay back the loan in full by September 27, 2008, the date that the Note matured, he is in default under the Note and the Security Agreement.  Plaintiff therefore is entitled to summary judgment as a matter of law on its breach of contract claim against

defendant. *See Royal Bank of Canada v. Mahrle*, 818 F. Supp. 60, 62 (S.D.N.Y. 1993) (granting summary judgment in action to enforce promissory note upon showing of execution and default).

Plaintiff is also entitled to summary judgment on its foreclosure claim.  The Uniform Commercial Code in New York provides that after default, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the . . . security interest . . . by any available judicial procedure." N.Y. U.C.C. § 9-601(a) (McKinney 2002).  The rights of a secured party upon default include the right to "take possession of the collateral." N.Y. U.C.C. § 9-609(a)(1). Because there is no genuine issue of material fact concerning whether Lehman is a secured party and Walji is in default, Lehman may, as a matter of law, enforce its security interest against Walji. N.Y. U.C.C. §§ 9-601(a), 9-609(a)(1).

## III.   CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment in its favor is granted in full.  In addition, plaintiff is directed to submit a proposed order specifying the total amount of defendant's indebtedness, including interest, late fees, attorneys' fees, and costs pursuant to the Note and the Security Agreement.


Dated: New York, New York
       May 11, 2011


SO ORDERED:

Sidney H. Stein, U.S.D.J.